UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

JAMES FLOYD,                                    )          Civil Action No.: 4:06-cv-3120-RBH
                                                )
        Plaintiff,                              )
                                                )
v.                                              )          **ORDER**
                                                )
WBTW; and FLORENCE MORNING                      )
NEWS and/or Parent Company,                     )
                                                )
        Defendants.                             )
_____         )

Pending before the court is Defendants' [Docket Entry #30] motion for summary

judgment.[1]

Background

Plaintiff, James Floyd, brought this defamation action against WBTW, Florence

Morning News, and/or Parent Company[2] concerning a posting on the television station's

website on March 1, 2006. Plaintiff is a medical doctor whose licence to practice medicine

was suspended in 2003 by Temporary Order of the South Carolina Board of Medical

Examiners (Board). The Temporary Order stated that Respondent's addiction to drugs or

alcohol was to such a degree that it rendered the license holder unfit to practice medicine and

constituted a serious threat to the public health, safety, or welfare. On October 5, 2005, the

---

[1]        Pursuant to Local Rule of Civil Procedure 7.08, the district court may determine motions without a hearing.

[2]        In the Defendants' Answers to the interrogatories required by Local Rule of Civil Procedure 26.01, the Defendants indicate they are not properly identified in the Complaint. They state the defendants are owned by Media General Operations, Inc. They also state they will accept service of any amended pleadings. It is unclear if counsel have simply agreed to substitute Media General Operations, Inc. as the proper party defendant since no amended pleadings have been filed. For purposes of upcoming jury selection, both counsel should consult and notify the court.

Board issued a Final Order suspending Plaintiff's license.

On March 1, 2006, WBTW ran a television news story entitled "Medical Professionals Addicted." During the 6:00 p.m. broadcast, it was reported that Plaintiff's medical license had been suspended because of addiction to alcohol or drugs. On the evening of March 1, 2006, WBTW posted the story to its website and incorrectly reported that Plaintiff's medical license had been suspended because of abuse of crack cocaine. According to affidavits submitted with their motion, Defendants state that the website error was corrected to accurately reflect the reason for Plaintiff's suspension on March 2, 2006. Defendants state that the web posting was deleted in its entirety on March 8, 2006.

Plaintiff brought the instant lawsuit alleging one cause of action for libel.

### Summary Judgment Standard

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Once the moving party makes the showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

When no genuine issue of any material fact exists, summary judgment is appropriate. *Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Id*. However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that

there be no genuine issue of material fact." *Id.*, *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

Summary judgment should only be granted in those cases where there is no issue of fact involved and inquiry into the facts is not necessary to clarify application of the law. *McKinney v. Board of Trustees Mayland Community College*, 955 F.2d 924 (4th Cir. 1992). A district court should not grant summary judgment "unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under the circumstances." *Campbell v. Hewitt, Coleman & Assoc.*, 21 F.3d 52, 55 (4th Cir. 1994).

### Discussion

The essential elements of a claim for defamation are: 1) a false and defamatory statement; 2) unprivileged publication to a third party; 3) fault on the part of the publisher; and 4) actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. *Erickson v. Jones Street Publishers, LLC*, 629 S.E.2d 653, 664 (S.C. 2006).

The United States Supreme Court has held that, in certain circumstances, the First Amendment places limitations on tort liability for defamation. *See, e.g.*, *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964) (concluding that the First Amendment prevents a "public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice' - that is, with knowledge that it was false or with reckless disregard of whether it was false or not"); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345-47 (1974) (noting the distinction between public

officials, public figures, and private figures with regard to the degree of constitutional privilege a media defendant may claim when publishing matters of public concern and holding that the States were free to "define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehoods injurious to a private individual" as long as they did not impose liability without some degree fault); *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 761 (1985) (holding that where speech involves no matters of public concern, "the state interest adequately supports awards of presumed and punitive damages - even absent a showing of 'actual malice'"); *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776-77 (1986) (holding that when a plaintiff is a private figure and the speech is a matter of public concern, the First Amendment requires the plaintiff to prove falsity of the statement). The First Amendment limitations differ based upon: 1) whether the defamed individual is a public figure, public official, or private figure; and 2) whether the subject matter of the alleged defamatory statement is a matter of public or private concern.

In this case, the parties appear to agree that Plaintiff is a private figure plaintiff. In fact, no reasonable argument can be made that Plaintiff is a public official or public figure. With regard to the second inquiry - whether the subject matter of the alleged defamatory statement is a matter of public or private concern - it seems clear that the subject matter of the statement was a matter of public concern. However, Plaintiff argues that the statement was not a matter of public concern.

"Whether . . . speech addresses a matter of public concern must be determined by [the expression's] content, form, and context . . . as revealed by the whole record." *Dun & Bradstreet*, 472 U.S. at 761. Considering these factors, the court concludes that the allegedly

defamatory news report involved a matter of public concern.  The statement, which listed

several medical professionals who had been disciplined for substance abuse, was posted on the

Defendants' news website.  Clearly, the public has a right to know, and an interest in, which

medical professionals in the region have been disciplined or had their licenses suspended for

substance abuse.

Because Plaintiff is a private figure plaintiff and the alleged defamatory statement was

of public concern, the First Amendment requires the plaintiff "to plead and prove common law

malice, demonstrate the falsity of the statements, and show actual injury in the form of general

or special damages."[3] *Erickson*, 629 S.E.2d at 670.

---

[3]    The court is especially troubled by the state of defamation law in South Carolina.  With regard to
private figure plaintiffs and matters of public concern, there appears to be some confusion as to the
appropriate standard of liability for a media defendant.

In *Gertz v. Robert Welch, Inc.*, the United States Supreme Court held that "so long as they do not
impose liability without fault, the States may define for themselves the appropriate standard of liability for a
publisher or broadcaster of defamatory falsehood injurious to a private individual." 418 U.S. at 347.
Accordingly, a large majority of jurisdictions have held that, in cases involving a private figure plaintiff and
a matter of public concern, a private figure plaintiff may recover compensatory damages by showing
negligence on the part of the publisher. *Holtzscheiter v. Thomson Newspapers, Inc.*, 506 S.E.2d 497, 508-9
(S.C. 1998) (Toal, J., concurring) (*Holtzscheiter II*).

In *Holtzscheiter II*, Justice Toal (who is now Chief Justice) recognized that the South Carolina
Supreme Court's opinions in the area of defamation had not "completely taken into consideration the impact
of the decisions by the United States Supreme Court." 506 S.E.2d at 505.  Justice Toal noted that "a
coherent, consistent, and constitutional approach" was lacking in South Carolina defamation law. *Id*.  To
address those issues, Justice Toal wrote a concurring opinion which proposed "a new theoretical framework
for analyzing defamation issues." *Id*.

Justice Toal wrote that the negligence standard was the appropriate standard of liability for private
figure plaintiffs to recover against media defendants. *Id*. at 508-9.  Citing *Turf Lawnmower Repair, Inc. v.
Bergen Record Corp.*, 655 A.2d 417, 423-24 n.1 (N.J. 1995), Justice Toal noted that 42 jurisdictions have
adopted the negligence standard for private plaintiffs.  Interestingly, *Turf Lawnmower Repair* listed South
Carolina as one of the jurisdictions where a negligence standard was used.  Apparently, the New Jersey
Supreme Court interpreted *Jones v. Sun Publishing Co.*, 292 S.E.2d 23 (S.C. 1982), as establishing a
negligence standard for private figure plaintiffs.  Also, Judge Ralph King Anderson's widely used book of
jury instructions states: "[t]o recover for defamation, a private-figure plaintiff must prove the actions of the
defendant were negligent." Ralph King Anderson, Jr., South Carolina Requests to Charge - Civil § 14-11
(2002).

In *Erickson v. Jones Street Publishers, LLC*, the South Carolina Supreme Court appeared to depart
from earlier South Carolina cases that, at the very least, implied that negligence was the appropriate
standard.  In *Erickson*, the Court stated that in cases involving matters of public concern, a private figure
plaintiff was required "to plead and prove common law malice, demonstrate the falsity of the statements,

Defendants argue they are entitled to summary judgment because the Plaintiff has no proof of common law malice.  Common law actual malice "means that the defendant was actuated by ill will in what he did, with the design to causelessly and wantonly injure the plaintiff; or <u>that the statements were published with such recklessness as to show a conscious indifference toward plaintiff's rights</u>." *Jones v. Garner*, 158 S.E.2d 909, 914 (S.C. 1968) (emphasis added).  Malice may be proved by direct or circumstantial evidence. *Hainer v. American Med. Int'l, Inc.*, 492 S.E.2d 103, 107 (S.C. 1997).  "Whether malice is the incentive for a publication is ordinarily for the jury to decide." *Murray v. Holnam, Inc.*, 542 S.E.2d 743, 751 (S.C. Ct. App. 2001).  "Proof that statements were published in an improper and unjustified manner is sufficient evidence to submit the issue of actual malice to a jury." *Hainer*, 492 S.E.2d at 107; *Murray*, 542 S.E.2d at 751.

In this case, arguably there is evidence from which a reasonable jury could conclude that the Defendants' conduct amounted to common law malice.  Defendants submitted

---

and show actual injury in the form of general or special damages." 629 S.E.2d at 670.  The court in *Erickson* acknowledged Chief Justice Toal's concurrence in *Holtzscheiter II*, which suggested that South Carolina adopt the negligence standard for private figure plaintiffs, but stated "the plurality of the Court in *Holtzscheiter II* chose to retain common law malice and accompanying presumptions in private-figure actions. *Erickson*, 629 S.E.2d at 670.  According to the court in *Erickson*, the question of whether to apply a negligence standard of liability to cases involving private figures and matters of public concern had never been properly before the court. *Id*. at 670 n.10.  In *Erickson*, the court appeared to state that because the question was never properly before the court, the court had never been given the opportunity to change the standard of liability from common law malice to negligence.  Thus, the *Erickson* court seemed to conclude that because the issue had never been directly addressed and a plurality of the court in *Holtzscheiter II* retained common law malice, South Carolina precedent required a common law malice standard of liability for private individuals to recover against media defendants.

    In this court's view, private figure plaintiffs should be provided more protection than that afforded by the common law malice standard.  Private figures are especially susceptible to injury to their reputations as a result of negligent publishing.  Because of their public exposure, public officials and figures are in a more convenient and superior position to correct mistaken publications and repair any damage to their reputations than private figures.  However, despite this court's disagreement with South Carolina's standard of liability for private figure plaintiffs (i.e. malice vs. negligence) and the fact that most other states use a negligence standard, as a federal court sitting in diversity, we must follow South Carolina law.

6

affidavits in support of their motion for summary judgment.  The affidavits seem to indicate

that the incorrect publication was the result of a simple transcription error.  Christopher

Huffman, a former news reporter for WBTW, was the individual who made the transcription

error that resulted in the incorrect posting on the Defendants' website.  Huffman states in his

affidavit that he created the news story at issue in this case.  After preparing the broadcast of

the story, Huffman indicates that he wrote the corresponding story that was published on the

Defendants' website.  Huffman states that he had "no ill will or hostile or malicious feelings

towards" the Plaintiff.  However, as noted above, malice can be shown through recklessness.

Huffman's affidavit is silent as to any protective measures taken to avoid the error that

occurred in this case.  There is circumstantial evidence that no precautionary measures were in

place or utilized to protect against this type of reporting error.  Thus, drawing all reasonable

inferences in favor of the nonmoving party, circumstantial evidence of recklessness could

arguably exist based on the record presented.

Both the television newscast and the web posting were relatively short.  The web

posting contained only approximately 278 words and listed only five doctors and the purported

reasons they were disciplined.  Arguably, proofreading the story for correctness before

publishing or taking some other protective measures would have prevented Huffman's

transcription error.  Because the allegation that someone abused crack cocaine and lost their

medical license as a result is so serious and so potentially damaging to one's reputation, a

reasonable jury may conclude that the failure to utilize some protective measures before

publishing such as story was such a gross deviation from reporting practices that it amounted

to a reckless or conscious disregard to the rights of the plaintiff.  It is for a jury to determine

whether Defendants' conduct was done with common law malice as defined above.

Defendants also argue that the publication was substantially true because Plaintiff was suspended for abusing drugs and alcohol and crack cocaine is a drug. Defendants argue, in essence, that the use of crack cocaine versus the generic term "drug" is a distinction without a difference. This argument is without merit.

Finally, Defendants argue that summary judgment should be granted as to Plaintiff's claim for punitive damages because Plaintiff has failed to show constitutional actual malice. In order for a private figure plaintiff to recover punitive damages from a media defendant in a defamation case involving a matter of public concern, the plaintiff is required to prove by clear and convincing evidence that the defendant acted with constitutional actual malice. *Erickson*, 629 S.E.2d at 665. Constitutional actual malice means that the defendant published the statement with knowledge it was false or with reckless disregard of whether it was false or not. *New York Times Co.*, 376 U.S. at 280; *Gertz*, 418 U.S. at 334. Because there is circumstantial evidence that Defendants took no steps to ensure the web story's accuracy or correctness, a reasonable juror might conclude that Defendants published the statement concerning Plaintiff with reckless disregard for the truth.

Conclusion

For the reasons stated above, Defendants' [Docket Entry #30] motion for summary judgment is **DENIED**.

**IT IS SO ORDERED**.

(*signature page to follow*)

Florence, S.C.                                    s/ R. Bryan Harwell
December 17, 2007                                 R. Bryan Harwell
                                                  United States District Court Judge